Filed 4/9/25  P. v. Moore CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C101099 |
| Plaintiff and Respondent, | (Super. Ct. No. 95F10037) |
| v. | |
| STEVEN JOHNSON MOORE, | |
| Defendant and Appellant. | |

Defendant Steven Johnson Moore was convicted in 1996 of multiple counts related to a domestic violence incident; he was sentenced to prison for 80 years plus 30 years to life, including three years for three prior prison term enhancements.  (Pen. Code, former § 667.5, subd. (b);[1] see also *People v. Moore* (Oct. 21, 1997, C024535) [nonpub. opn.] (*Moore*).)  He appeals from an April 2024 resentencing order wherein the trial court

---

[1]  Undesignated statutory references are to the Penal Code.

struck the three prior prison term enhancements pursuant to section 1172.75, but otherwise left his original sentence unchanged. He contends the trial court abused its discretion in declining to further reduce the sentence. We disagree and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

*Conviction and Original Sentencing*

We summarize the facts of defendant's crime as described in this court's opinion in defendant's original appeal from his conviction. (*Moore, supra,* C024535.) In December 1995, defendant and the victim lived together. One night, he "went berserk" and "terrorize[d]" the victim for six hours. He choked her, threw her against a wall, threatened her with a piece of broken glass, forced her to orally copulate him several times, and repeatedly attempted to have sexual intercourse with her. He also demanded she come with him on a bus trip the following day. When they returned, the victim contacted police despite defendant's threats to kill her if she did so. The victim was taken to the hospital, and the examination results were consistent with sexual assault. During trial, the prosecution produced evidence of previous sexual assault with a different victim. (*Ibid.*)

In 1996, a jury found defendant guilty of inflicting corporal injury on a cohabitant resulting in a traumatic condition (§ 273.5, subd. (a); count one), two counts of forcible oral copulation (former § 288a, subd. (c); counts two and six), three counts of forcible rape (§ 261, subd. (a)(2); counts three, four, and five), false imprisonment (§ 236; count seven), and dissuading a witness from reporting a crime (§ 136.1, subd. (c)(1); count eight). For counts two through six, the jury found true allegations that defendant committed the offenses using a deadly weapon. (§§ 12022.3, subd. (a), 667.61, subds. (b) & (e)(4).) Based on a 1979 conviction for robbery (§ 211), the jury also found true that defendant had a prior serious felony conviction (§ 667, subd. (a)) and a prior strike conviction (§§ 667, subds. (b)-(i), 1170.12). In addition, the jury found true three prior prison term enhancements (former § 667.5, subd. (b)) based on (1) a 1982 conviction for

2

burglary (§ 459) and failure to appear (§ 1320); (2) a 1989 conviction for possession of a controlled substance for sale (Health & Saf. Code, § 11351); and (3) a 1991 conviction for petty theft with a prior (§ 666).

In August 1996, the trial court sentenced defendant to prison for 30 years to life (15 years to life doubled due to the prior strike) on count two with the associated firearm enhancement stayed under section 654 consecutive to an 80-year determinate term as follows:  eight years (the upper term of four years doubled due to the strike) on count eight; 12 years (the middle term of six years doubled due to the strike) consecutive on each of counts three, four, five, and six plus four years (the middle term) consecutive for each of the associated dangerous weapon enhancements (or 64 years total); six years (the middle term of three years doubled due to the strike) on count one stayed under section 654; four years (the middle term of two years doubled due to the strike) on count seven stayed under section 654; five years consecutive for the prior serious felony enhancement; and one year consecutive for each of the three prior prison term enhancements (or three years total).

On appeal, this court affirmed the judgment.  (*Moore*, *supra*, C024535.)

*Recall and Resentencing*

The trial court subsequently received notice from the California Department of Corrections and Rehabilitation that defendant was eligible for resentencing under section 1172.75.  In September 2023, the court appointed counsel and requested briefing.  In November 2023, defendant filed a brief asking the trial court to dismiss the prior prison term enhancements, strike his prior strike conviction, dismiss the dangerous weapon enhancements, and stay the punishment for the prior serious felony enhancement. Defendant argued he posed a lower risk to reoffend or commit future violence because he was now 64 years old and suffered from various health problems, including limited mobility, chronic hepatitis C, cirrhosis of the liver, hypertension, and end-stage liver

3

disease.  He had served 28 years in custody, and his continued incarceration was not in the interest of justice.

Defendant further argued he had made rehabilitative efforts while incarcerated, including working in the kitchens and as a porter in various locations between 1998 and 2002.  He also had completed adult basic education.

As to his prior strike, prior serious felony enhancement, and the dangerous weapon use enhancements, defendant noted that multiple enhancements had been alleged in the case, the application of the enhancements resulted in a sentence of more than 20 years, and the enhancements were based on a prior conviction that was more than five years old. (§ 1385, subds. (c)(2)(B), (c)(2)(C), (c)(2)(H), but see, e.g., *People v. Serrano* (2024) 100 Cal.App.5th 1324, 1338 [the three strikes law is an alternative sentencing scheme not impacted by § 1385, subd. (c)].)  His advanced age and health problems meant he no longer posed a danger to public safety.

Defendant also argued the trial court could not impose a sentence above the middle term under the current version of section 1170, subdivision (b).  He asked for a 19-year prison sentence:  four years (the middle term) on count eight, three years (the low term) consecutive on each of counts two, three, four, five, and six, and stayed punishment on counts one and seven under section 654.  Alternatively, he asked the court for a 31-year sentence:  the middle term of six years on each of counts two, three, four, five, and six, plus one year (or one-third the middle term) consecutive on count eight.  Defendant attached health records, his inmate assignment history, and educational records.

In January 2024, the prosecution filed a brief asking the trial court to strike the prior prison term enhancements and reduce the sentence on count eight to the middle term of six years, but otherwise leave the sentence unchanged.  The People argued that to do otherwise would threaten public safety and was not in the interest of justice. Defendant had subjected the victim to a "prolonged, violent attack in her own home," including multiple sexual offenses that left the victim injured.  She was particularly

4

vulnerable because she had chronic health issues, and defendant had threatened her with future violence. He did not appear to have expressed remorse during his 2021 interview with a parole board forensic psychologist for his comprehensive risk assessment, saying that he attacked the victim in part because she had asked him to stop selling drugs, and "getting rough with the victim" aroused him.

In addition, defendant had an extensive criminal history. As a minor, defendant committed assault with a deadly weapon. As an adult, he committed his prior strike by using a snake as a weapon to rob a newspaper deliveryman. He also had multiple parole violations, and the current offense happened only days after he had been released from jail. He had multiple prison rule violations, including a 2023 violation for fermentation or distillation, a 2021 violation for assault on a peace officer, and a 2019 violation for behavior that could lead to violence. Further, he had a history of substance abuse and recently said he intended to continue using alcohol. He had failed to participate in self-help opportunities while in prison, and he had a "concerning belief system relating to women," including " 'beliefs which justified the use of sexual violence against women.' "

The prosecution attached a 2021 comprehensive risk assessment performed by a parole board psychologist. The psychologist noted he had considered defendant's elderly age and chronic health issues in assessing defendant's violence risk. Defendant scored in the "Well Above Average Risk" category on the STATIC-99R[2] for sexually violent recidivism. He also demonstrated a "high level of behavioral instability and a lack of engagement in programming." In sum, defendant represented a "high risk for violence," if granted parole, with "markedly elevated risk relative to long-term parolees and average

---

[2] The Static-99R is a "sex offender risk assessment tool that must be used to evaluate adult males who are required to register as sex offenders" that " 'takes into account the age of a sexual offender based on statistics showing the risk of sexual reoffense decreases as the offender ages.' " (*People v. LaBlanc* (2015) 238 Cal.App.4th 1059, 1067, fn. 6.)

to above average risk relative to shorter-term parolees released without discretion," especially given his recent prison rule violations and continued alcohol use.

Defendant refiled his sentencing memorandum in February 2024, again asking the trial court to strike his prior strike under *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497, dismiss the dangerous weapon use and prior prison term enhancements, and stay the punishment for the prior serious felony enhancement.

In April 2024, the prosecution filed another brief arguing the trial court could impose the upper term on the principal count based on defendant's four felony prior convictions, which had been found true by the jury. The prosecution submitted a certified 969(b) packet.

During the April 2024 resentencing hearing, the prosecution informed the trial court that the victim was unavailable because she died in 1999 and argued defendant was not outside the spirit of the three strikes law, especially since defendant had committed his current crimes "within days of his release" for a prior offense. In addition, it would be inappropriate to dismiss any of the enhancements given the "seriousness and gravity" of defendant's current crimes. Further, defendant had an extensive criminal history, the comprehensive risk assessment from 2021 determined defendant had "a particularly concerning mindset" toward women, and he had a history of substance abuse but continued to drink alcohol while in prison.

Defendant again asked the court to dismiss the enhancements under section 1385, subdivisions (c)(2)(A) and (c)(2)(B). Although defendant had prison rule violations, none of them involved violence. And, although his rehabilitative efforts in prison were "not extensive," he had done "some." Moreover, he was no longer dangerous given his age and chronic health issues. As to his prior strike, defendant argued it was a "very old conviction," committed while defendant was young and immature. Moreover, the crime's unique circumstances (robbing the victim with a snake) did not suggest

6

sophistication or criminality, especially since no one had been hurt, and defendant stole only five dollars.

The trial court acknowledged defendant's prior strike was "not the worst I've ever seen." Still, the facts of the current crimes were "egregious," and defendant had an extensive criminal history. Most significantly, defendant had failed to engage in rehabilitation, leading the court to be very reluctant to reduce defendant's sentence. The court was also concerned by the 2021 assessment that defendant had a high risk of violence. The court expressed its opinion that the longer a person is incarcerated, the more likely they are to reoffend, since it was "harder to adjust once you get out of custody."

With respect to the term on the principal determinate count, the trial court noted that the prosecution had filed a 969(b) packet certifying defendant's prior convictions, which were "numerous and increasing in seriousness."

Turning to the remaining sentencing issues, the trial court noted it did not take sentencing lightly and had to consider whether, "overall," the sentence was "appropriate." The court acknowledged that, in the past, "there was a real lock-them-up, throw-away-the-key attitude that needed to be adjusted." It continued: "But, in this case, it is hard for me to move the needle. No matter what I do, you're going to do 30 to life in my opinion. All I can do is adjust the determinate sentence, and the only way to really do that is to strike the strike. And the only way to do that is to really come to the conclusion that the most recent offense is not serious." Alternatively, if the current offense was serious, the court could strike the prior strike if defendant had "taken great strides" toward rehabilitation and ensuring he would not reoffend. However, defendant had not taken such strides. Under the circumstances, the court struck the three prior prison term enhancements but otherwise left the sentence unchanged, for a new sentence of 77 years plus 30 years to life in prison.

Defendant timely appealed.

7

## DISCUSSION

### I

### *Legal Background*

Section 1172.75, effective in 2022, generally invalidates sentence enhancements imposed under former section 667.5, subdivision (b), with some exceptions not relevant here. When presented with a person eligible for relief, a trial court shall "recall the sentence and resentence the defendant." (§ 1172.75, subd. (c).) The statute requires the court to apply the sentencing rules of the Judicial Council, as well as any other changes in law that reduce sentences or increase judicial discretion. (§ 1172.75, subd. (d)(2); see also *People v. Monroe* (2022) 85 Cal.App.5th 393, 402 [§ 1172.75 "requires a full resentencing, not merely that the trial court strike the newly 'invalid' [prior prison term] enhancements"].)

Effective January 1, 2022, Senate Bill No. 81 (2021-2022 Reg. Sess.) amended section 1385 to add subdivision (c), which requires a trial court to dismiss an enhancement "if it is in the furtherance of justice to do so." (§ 1385, subd. (c)(1); Stats. 2021, ch. 721, § 1.) In exercising its discretion, "the court shall consider and afford great weight to evidence offered by the defendant to prove that any of the mitigating circumstances in subparagraphs (A) to (I) are present. Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety. 'Endanger public safety' means there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others." (§ 1385, subd. (c)(2).) The mitigating circumstances include where multiple enhancements are alleged in a single case and where the enhancement is based on a conviction that is more than five years old. (§ 1385, subds. (c)(2)(B), (c)(2)(H).)

We review a trial court's denial of a motion to dismiss a sentence enhancement under section 1385 for abuse of discretion. (*Nazir v. Superior Court* (2022)

79 Cal.App.5th 478, 490.) "A court abuses its sentencing discretion when it acts arbitrarily and capriciously, relies on improper matter in reaching its decision, or is unaware of the scope of its discretion so that it does not exercise informed discretion at all." (*People v. Knowles* (2024) 105 Cal.App.5th 757, 765.)

## II

### *Analysis*

Defendant argues the trial court erred in declining to strike the prior serious felony enhancement and the four dangerous weapon use enhancements. Pointing to the trial court's comments that it was "hard for [it] to move the needle," and the only way it could "really" adjust the determinate sentence was to "strike the strike," defendant argues the trial court was solely focused on defendant's *Romero* motion and was therefore unaware of its discretion to strike any of the enhancements.

Alternatively, defendant argues the trial court abused its discretion in declining to strike the other enhancements. According to defendant, although the "nature" of the current offense and defendant's criminal history "justified a long sentence, . . . that was satisfied by the substantial indeterminate term." Defendant further notes that the court never stated that striking some of the enhancements would be against the interest of justice.

In a related argument, defendant further contends the trial court erred in failing to expressly state that it found dismissing the enhancements would endanger public safety. To the extent the court made such a finding impliedly, defendant contends it applied the wrong standard, because it erroneously focused on defendant's past risk, including the facts of the current offense and defendant's failure to pursue rehabilitative programming. Instead, defendant argues the court should have focused on whether defendant would pose a risk at his estimated release date under a revised sentence. Given that defendant was sentenced to a determinate plus an indeterminate term, any release would have had been contingent on review by the parole board, which could properly assess defendant's

9

dangerousness at that time. In addition, the court failed to adequately consider defendant's poor health. Finally, defendant argues remand is necessary because he was prejudiced by the court's decision to decline to strike the enhancements.

We find no merit in defendant's contentions that reversal is required because the trial court failed to explicitly find that dismissal of the dangerous weapon use and prior serious felony conviction enhancements was not in the interest of justice, or that defendant was a danger to public safety. Defendant extensively argued in his sentencing briefs and during the hearing that the trial court should dismiss the enhancements under section 1385, including arguing that defendant posed a lower risk to public safety due to his age and chronic health issues. Although the court may have stressed defendant's prior strike during the resentencing hearing, given that the court stated it had to consider "overall" whether the sentence was "appropriate," we interpret the court's comments as (correctly) noting that striking defendant's prior strike had the largest potential to reduce defendant's sentence.

After stressing the potential impact of defendant's prior strike, the trial court went on to explain that it was imposing the same sentence (and thereby declining to dismiss the enhancements) based on the "egregious" nature of his current crimes, his failure to engage in rehabilitation in prison, and his extensive criminal history. The court also cited the parole board psychologist's 2021 assessment that defendant posed a "markedly elevated risk relative to long-term parolees and average to above average risk relative to shorter-term parolees released without discretion," indicating the court was aware of its obligation to consider defendant's current and potential future risk to public safety upon release. (See *People v. Gonzalez* (2024) 103 Cal.App.5th 215, 228 [when considering whether dismissal of the enhancement would endanger public safety as required under § 1385, a trial court should assess the current and future dangerousness of the defendant, including considering when the defendant would be released from prison].) Although the court did not specifically mention defendant's chronic health issues or age when

10

declining to dismiss the enhancements, we reject defendant's invitation to find error based on the court's silence. The court indicated its sentencing decision was based in part on the 2021 parole board psychologist's findings; the psychologist made clear he had considered defendant's age and chronic health issues when assessing defendant's risk for violence. (See *People v. Brown* (2007) 147 Cal.App.4th 1213, 1229 [a reviewing court does not presume a trial court erred or misunderstood its sentencing discretion when the record is silent on the issue].) Under the circumstances, there is no evidence that the court was unaware of defendant's arguments in favor of mitigation, misunderstood its discretion under section 1385, or failed to follow the law. (See *People v. Ramirez* (2021) 10 Cal.5th 983, 1042 ["Absent evidence to the contrary, we presume that the trial court knew the law and followed it"].)

Given our conclusions, we need not address defendant's argument that he was prejudiced by the trial court's decision to decline to strike the enhancements.

## DISPOSITION

The judgment is affirmed.

/s/
Duarte, J.

We concur:

/s/
Hull, Acting P. J.

/s/
Mauro, J.

11