Filed 4/24/25  P. v. Wilfredo CA1/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br>v.<br>JORGE AJIATAZ WILFREDO,<br><br>　　　Defendant and Appellant. | A169525<br><br>(Sonoma County<br>Super. Ct. No. SCR763521-1) |

After a jury convicted defendant Jorge Ajiataz Wilfredo of felony driving under the influence of alcohol (DUI), the trial court sentenced him to an upper term of three years in prison.  On appeal, defendant contends the court erred by failing to consider imposing a lower term sentence despite evidence that childhood trauma contributed to the commission of defendant's offenses.  (Pen. Code, § 1170, subd. (b)(6)(A); statutory references are to this code, unless otherwise indicated.)  He also contends that his right to the effective assistance of counsel was violated due to his trial counsel's failure to invoke a statutory presumption in favor of a lower term.  We reject these contentions and affirm.

## BACKGROUND

On June 10, 2023, at around 5:15 p.m., California Highway Patrol Officer Kirby saw defendant standing near the open passenger door of a car

on the side of a highway, urinating by the side of the road. By the time Kirby parked and approached on foot, defendant was ready to drive away. He waved, made a "thumbs up" gesture, and drove about eight to 10 feet before Kirby instructed him to stop. Defendant's eyes were bloodshot, and there were two open beer cans in the center console of his car, but he claimed he had only one beer earlier that day. After field sobriety tests indicated defendant was under the influence of alcohol, he was placed under arrest and a chemical breath test was then administered, which confirmed he was intoxicated.

***Defendant's Convictions***

In July 2023, the Sonoma County District Attorney filed an information charging defendant with the following offenses: felony DUI within 10 years of a prior felony DUI offense (Veh. Code, §§ 23152, subd. (a), 23550.5; count 1); felony driving with a blood alcohol content (BAC) of 0.08 within 10 years of a prior felony DUI offense (*id.*, §§ 23152, subd. (b), 23550.5; count 2); and misdemeanor driving with a license that was suspended or revoked for a prior DUI (*id.*, § 14601.2, subd. (a); count 3). As to both DUI charges, the People alleged defendant's BAC was 0.15 percent by weight or more, subjecting him to an enhanced sentence. (*Id.*, § 23578.) The People also alleged that numerous aggravating sentencing factors applied.

Defendant pleaded no contest to the misdemeanor, and the DUI charges were tried to a jury in the fall of 2023. The jury found defendant guilty of both charges and that the enhancements for a BAC of at least 0.15 were true. A bifurcated court trial was held to adjudicate prior conviction and aggravating factor allegations. The court found that all of the alleged prior convictions and the following aggravating factors were true: Defendant's prior convictions are numerous or increasingly serious; he has

served a prior jail term pursuant to Penal Code section 1170, subdivision (h); and his prior performance on probation, mandatory supervision, post release community supervision (PRCS), or parole was unsatisfactory. (Cal. Rules of Court, rule 4.421(b)(2)–(4); all rule references are to these rules.)

## *Defendant's Sentence*

The sentencing hearing was originally scheduled for November 2023, but was continued at defendant's request. On December 18, the court denied the People's request for another continuance and proceeded with the pronouncement of judgment and sentence. The court stated that in addition to hearing the trial evidence, it had considered the probation report, defendant's sentencing memorandum, a letter from defendant, and arguments by counsel.

## *Probation Report*

The probation report, received by the court in November 2023, documents defendant's criminal history. His current convictions for the two alternately charged counts of felony DUI are his seventh and eight convictions and his sixth separate DUI case "in just over a decade." During that timeframe, defendant was also convicted of felony false imprisonment and misdemeanor child endangerment in two unrelated incidents.

***Defendant's interview:*** Defendant told the probation officer that he regrets what he " 'did.' " He acknowledged that it was " 'not right,' " and said it would not " 'happen again.' " But he declined to say how much alcohol he had consumed on the day of his arrest. Defendant was " 'tired' " of being in jail and tired of alcohol, and he regretted not being available for his young daughter or for his pregnant girlfriend. He wanted to make a change in his life and said he now understood that he needed treatment and services. He

had started reading the " 'AA book' " and, regardless of his sentence, he wanted to seek residential treatment when he was released from custody.

Defendant reported that he was abused as a young child and suffered significant trauma. His father abandoned the family, and his mother moved to the United States with his older siblings, but left him in Guatemala for a few years with a caretaker who physically and mentally abused him. Defendant tried to stay out of the house as much as possible and "sought refuge" with teenagers who introduced him to alcohol. Defendant reported that he started drinking alcohol when he was eight years old. Within a few years, he was drinking as much as a half bottle to a full bottle of alcohol a week, when he had money to afford it. Then one day he passed out in the street, which prompted someone to call his mother, who arranged for him to join her in the United States. Defendant was 10 or 11 when he was reunited with his mother. He was angry with her for leaving him in Guatemala, but their relationship improved over time. However, his struggles with sobriety continued into adulthood.

Defendant reported that when he first moved to the United States, he stopped drinking for about a year. But then " 'older people' " offered him beer, telling him nothing bad would happen. During high school, he drank beer at school, at first only once a month and then every few weeks. After he left school, he drank every week. When he suffered his first arrest at age 18, he was drinking three or four beers a day. The arrest scared him but after his release he began drinking again.

When asked to explain how his drinking had been problematic, defendant responded that it resulted in " 'being here, locked up,' " away from family. When asked if his conduct was dangerous to the public, defendant responded that he does not get " 'crazy' " when he drinks. After prompting

4

about the dangers of drinking and driving, he acknowledged that if not for his current arrest he could have hurt somebody. Defendant also acknowledged that he never completed any DUI program required by his prior convictions. He believed things would be different going forward because previously he did not believe he needed help.

***Recommendations***: The department recommended that the court deny probation. Defendant was "limited from a grant of probation" due to his two prior felony DUIs, and the department found no unusual circumstances that would warrant a grant of probation. (§ 1203, subd. (e)(4); rule 4.413.) Moreover, the department believed that releasing defendant from custody would create "significant concern for the safety of the community." The department was concerned that it took "an excessive number of prompts" from the probation officer before defendant acknowledged the danger of drinking and driving. Although defendant's alcohol problems may stem from childhood trauma, he has continued to engage in a similar pattern of behavior despite past interventions, the department reported.

The department also opined that, aside from statutory limitations, defendant was not suitable for probation. It appeared that he had completed two prior grants of conditional sentence, and he had expressed remorse and an interest in treatment. However, his "prior performance on numerous [other] grants of conditional sentence, on formal probation, and on PRCS [was] unsatisfactory." Moreover, it was unlikely that imprisonment would have a collateral consequence or negative effect on defendant, but it was likely that he would be a danger to others if he was not imprisoned, the department believed.

The department recommended an upper term of three years for the count two felony DUI, a stayed three year term for the count one offense, and

5

that any punishment imposed for the count three misdemeanor run concurrently. As support for this recommendation, the department addressed aggravating and mitigating factors. It identified two mitigating circumstances: defendant's satisfactory performance on two prior grants of conditional sentence (rule 4.423(b)(15)), and his report that extensive childhood trauma and abuse contributed to his ongoing alcohol abuse, leading to the commission of the crime (rule 4.423(b)(3)). The department believed these factors were outweighed by aggravating circumstances. In addition to the three aggravating factors found true by the trial court, the department reported that defendant was on PRCS when he committed the current crime (rule 4.421(b)(4)). Moreover, the jury had found true allegations that defendant's BAC was 0.15 percent or more when he committed the current offenses (rule 4.421(c)).

***Defendant's Sentencing Memorandum***

On December 12, 2023, the defense filed a memorandum requesting that the court sentence defendant to probation, with "an exhaustive set of terms." Its description of defendant's childhood was consistent with the probation report, with added details. The defense argued that defendant's "lifelong alcoholism and drug use, particularly during a time when [his] young brain was developing, certainly affected his executive and cognitive functioning."[1] The defense argued further that prior efforts at rehabilitation were unsuccessful because defendant grew up with the mindset that " 'men don't need help.' " However that mindset changed while he was in custody

---

[1] Defendant did not report "lifelong" drug use during his probation interview. He said that he began smoking marijuana as a child, but had stopped approximately seven years before his current convictions. When living in Guatemala as child, he inhaled paint thinner for about a year. He also " 'tried,' " or briefly used, other substances when he was a teenager.

this time, facing the prospect of a prison sentence and being separated from his family, and finally realizing that he could not change on his own without treatment. Moreover, the defense argued, the community would be safer if defendant was released on probation and into a residential program because this would open "an entirely different paradigm" for defendant affording the greatest likelihood of long-term sobriety given his genuine willingness to change.

Exhibits attached to the defendant's sentencing memo included letters accepting him into two residential programs as well as a handwritten letter from defendant to the court. Defendant's letter stated that he has an addiction to alcohol, and because of this he sometimes makes poor choices. He expressed a desire to be responsible and sober-minded, and to learn to control the influence that alcohol had on him. He said that prison would not be good for him, as it would expose him to "far worse influence." Seeking justice and fairness, defendant asked that the court not send him to a prison that offered him no structure, but instead to a program to help him be sober.

### Arguments By Counsel

At the sentencing hearing, defendant was represented by a deputy public defender who specially appeared for defendant's trial counsel. Defendant's counsel had not appeared because she assumed erroneously that the hearing would be continued. The court stated that it was familiar with the arguments in defendant's sentencing memorandum and was prepared to go forward if defendant waived the presence of his trial counsel. The court briefly summarized defendant's arguments, including that his background and mitigating factors constituted unusual circumstances. Defendant consulted with the specially-appearing attorney and then formally waived his

trial counsel's presence and agreed to be represented by a different deputy public defender.

During argument, the defense requested that the court consider placing defendant on probation and permitting him to attend residential treatment. Counsel argued that defendant had shown his commitment to engaging in treatment by agreeing to waive credits and accept an aggravated term if probation was not successful. Alternatively, if probation was denied, the defense requested that the court impose a "midterm or mitigated term and not the aggravated term for reasons outlined in the sentencing brief."

The prosecutor argued that "this [is] an aggravated case all day long," emphasizing three circumstances. First, defendant had committed felony DUI in another county, served a prison sentence, and had been out of custody for just a few months when he committed the current offense, which involved "another high blood alcohol." Second, defendant had incurred "many, many DUI priors." And third, defendant was in a treatment program when he committed the current offense.

### The Court's Findings and Sentencing Order

Before announcing sentence, the court found that defendant was "not an appropriate candidate" for probation, that aggravating factors outweigh mitigating factors, and that an upper term sentence was appropriate. Addressing defendant directly, the court noted that defendant had stated he would like to seek residential treatment even if probation was denied and it encouraged him to do that for his own sake and the sake of his family. Then the court sentenced defendant to an upper term of three years for the felony DUI in count two, and an upper term of three years for count one, stayed pursuant to section 654, for a total aggregate sentence of three years in state

prison. For the misdemeanor, the court imposed a concurrent one year term to be served in any penal institution.

## DISCUSSION

Defendant contends resentencing is required because (1) the record affirmatively shows that the trial court misunderstood its sentencing discretion, and (2) he was denied effective assistance of counsel at sentencing.

### I. Defendant Fails to Show Prejudicial Sentencing Error

The trial court's sentencing choices are reviewed for abuse of discretion. (*People v. Sandoval* (2007) 41 Cal.4th 825, 847.) The sentencing court has wide discretion in weighing the relevant factors. (*People v. Avalos* (1996) 47 Cal.App.4th 1569, 1582.) However, " ' "[a] court which is unaware of the scope of its discretionary powers can no more exercise that 'informed discretion' than one whose sentence is or may have been based on misinformation regarding a material aspect of a defendant's record." ' " (*People v. Salazar* (2023) 15 Cal.5th 416, 424 (*Salazar*).)

The burden is on the party attacking the sentence to show that the court abused its discretion by affirmatively demonstrating that the court misunderstood its sentencing authority. (*People v. Fredrickson* (2023) 90 Cal.App.5th 984, 988 (*Fredrickson*).) We assume the court understood and properly exercised its sentencing discretion. (*People v. Ochoa* (2020) 53 Cal.App.5th 841, 852.) This means that error will not be presumed from a silent record. (*Ibid.*; *People v. Lee* (2017) 16 Cal.App.5th 861, 866–867.) "[U]nless the record affirmatively reflects otherwise," we presume that the sentencing court considered all relevant factors in the California Rules of Court. (Rule 4.409.) Thus, remand "is unnecessary if the record is silent concerning whether the trial court misunderstood its sentencing discretion." (*People v. Brown* (2007) 147 Cal.App.4th 1213, 1229.)

9

The trial court's authority to impose an upper term sentence is addressed in section 1170, subdivision (b) (section 1170(b)). Section 1170(b)(1) makes "the middle term the presumptive sentence for a term of imprisonment unless certain circumstances exist." (*People v. Flores* (2022) 73 Cal.App.5th 1032, 1038.) Section 1170(b)(2) authorizes an upper term sentence "only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term and the facts underlying those circumstances have been stipulated to by the defendant or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." (§ 1170(b)(2).) Defendant does not argue that the court abused or exceeded its authority under section 1170(b)(2). Instead, he argues for the first time on appeal that the court erred by failing to consider whether defendant's childhood trauma triggered a presumptive lower term sentence pursuant to section 1170(b)(6).

As pertinent here, section 1170(b)(6) provides that, notwithstanding section 1170(b)(1), "unless the court finds that the aggravating circumstances outweigh the mitigating circumstances [so] that imposition of the lower term would be contrary to the interests of justice, the court shall order imposition of the lower term if any of the following was a contributing factor in the commission of the offense: [¶] (A) The person has experienced psychological, physical, or childhood trauma, including, but not limited to, abuse, neglect, exploitation, or sexual violence." (§ 1170(b)(6)(A); see *Salazar, supra*, 15 Cal.5th at p. 426.) Defendant argues that the trial court abused its sentencing discretion because it failed to recognize that evidence showing childhood trauma contributed to his addiction and his crime entitled defendant to a presumptive lower term sentence, pursuant to this provision.

Arguably, defendant forfeited this claim by failing to raise it below. (*People v. Achane* (2023) 92 Cal.App.5th 1037 (*Achane*) [failure to invoke presumption in favor of midterm and/or lower term is subject to forfeiture].) Defendant contends the forfeiture doctrine does not apply because the trial court's failure to consider whether section 1170 mandates a presumptive lower term resulted in an unauthorized sentence. Defendant has not shown that here. Section 1170(b)(6) requires a court to order a lower term sentence "unless the court finds that the aggravating circumstances outweigh the mitigating circumstances . . . ," but of course, that is precisely the finding the sentencing court made here. Further, section 1170(b)(2) authorizes the court to impose an upper term when specified requirements are met, and defendant does not dispute that those requirements were met in this case. These facts establish that defendant's sentence is authorized, and that he is attempting to challenge a discretionary sentencing choice, which he cannot do for the first time on appeal. A " 'party in a criminal case may not, on appeal, raise "claims involving the trial court's failure to properly make or articulate its discretionary sentencing choices" if the party did not object to the sentence at trial.' " (*People v. Scott* (2015) 61 Cal.4th 363, 406.)

As a variant of this argument, defendant contends that his claim is not subject to forfeiture because the sentencing court had a mandatory obligation under section 1170 to consider whether the defendant was entitled to a lower term presumption. (Citing *Fredrickson*, *supra*, 90 Cal.App.5th at p. 994.) In *Fredrickson*, the defendant appealed her midterm sentence for drug offenses. (*Id.* at p. 987.) The defendant argued that, because she was 23 when she committed her offenses, the trial court abused its discretion by failing to treat the lower term as the presumptive sentence pursuant to section 1170(b)(6)(B), which provides for such a presumption when youth was a

" 'contributing factor' " in the commission of a crime. (*Fredrickson*, at p. 987.) The *Fredrickson* court rejected this claim because the defendant failed to show that the lower term presumption applied. (*Id*. at pp. 987, 989, 991– 992.) The court explained that the presumption does not apply in every case involving a youthful offender, but only when the defendant's youth is shown to be a contributing factor in the commission of a crime. (*Id*. at pp. 981, 984.) In a footnote, the court clarified that its ruling was based on this failure of proof, not on principles of forfeiture.[2] (*Id*. at p. 994, fn. 8.) The court commented that in specified circumstances "[t]he statute mandates application of the lower term presumption," and this benefit "is not subject to forfeiture." (*Ibid*.)

In any event, whether or not the issue was forfeited, we reject defendant's challenge on the merits. The amendment to section 1170 that provides for a lower term presumption in specified circumstances had been in effect for more than a year before defendant was sentenced. (Stats. 2021, ch. 731, § 1.3, eff. Jan. 1, 2022.) We presume the court knew and applied that law, absent evidence to the contrary. (*People v. Ramirez* (2021) 10 Cal.5th 983, 1042.) Defendant points to nothing in the record indicating that the court was unaware of the section 1170(b)(6) presumption. And although we need go no further, we also note that the requirements for selecting an upper

---

[2] In this case there may have been an analogous failure of proof on the issue of whether defendant's childhood trauma was "a contributing factor in the commission of the offense." (§ 1170(b)(6).) Defendant's probation interview and sentencing memorandum sufficiently drew a causal connection between defendant's report of childhood abuse and his alcohol addiction, but defendant was not convicted of being addicted to alcohol. He was convicted of driving under the influence of a dangerously high amount of alcohol, after having done so multiple times in the past. Any causal connection between defendant's childhood trauma and his decisions, repeatedly, to get behind the wheel while under the influence of alcohol is more attenuated.

term sentence pursuant to section 1170(b)(2) were added to the statute at the same time as was the lower term presumption. (See *Achane, supra*, 92 Cal.App.5th at p. 1041.) The trial court's undisputed compliance with section 1170(b)(2) suggests that the court understood current law and did not overlook section 1170(b)(6), as defendant now contends, but instead concluded the lower term presumption either did not apply or was rebutted. Either way, defendant has not " ' "affirmatively demonstrate[d] that the trial court misunderstood its sentencing discretion," ' " and has therefore failed to show any abuse of discretion. (*Fredrickson, supra*, 90 Cal.App.5th at p. 988.)

There is language in *Fredrickson* suggesting an initial showing that defendant meets the criteria delineated in section 1170(b)(6) triggers an obligation by the court to make express findings establishing compliance with the statute. (*Fredrickson, supra*, 90 Cal.App.5th at p. 992.) We question whether, absent a statutory mandate to state findings on the record, affirmative findings under section 1170(b)(6) are required. But even if they were required in this case, any error in failing to state such findings regarding the inapplicability of the lower term presumption was harmless. (*People v. Watson* (1956) 46 Cal.2d 818, 836.)

Defendant argues that the fact the trial court failed expressly to address section 1170(b)(6) at the sentencing hearing raises a likelihood that it would reach a different decision, if this case was remanded for resentencing. We disagree. In the trial court, defendant did not argue that he was entitled to a lower term presumption, which likely explains why the court did not make an express finding that any presumption under section 1170(b)(6) was rebutted. The court did expressly consider defendant's report that childhood trauma led to his alcohol addiction and the defense argument that this mitigating factor outweighed aggravating factors. The court

13

necessarily rejected this argument by concluding that aggravating factors outweighed mitigating factors and that an upper term was appropriate. Considering this with the other facts and circumstances we have discussed, it is not reasonably probable that requiring the court expressly to address the lower term presumption would result in a more favorable sentence for the defendant in this case.

## II. Defendant Fails to Prove Ineffective Assistance of Counsel

Defendant contends his right to effective assistance of counsel was violated because his counsel in the trial court failed to invoke a presumptive low term or to object to the trial court's alleged failure to recognize that the presumption might apply. "[A] defense attorney who fails to adequately understand the available sentencing alternatives, promote their proper application, or pursue the most advantageous disposition for his client may be found incompetent." (*People v. Scott* (1994) 9 Cal.4th 331, 351.) To establish ineffective assistance of counsel, "the defendant must first show counsel's performance was deficient, in that it fell below an objective standard of reasonableness under prevailing professional norms. Second, the defendant must show resulting prejudice, i.e., a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different." (*People v. Mai* (2013) 57 Cal.4th 986, 1009.) We conclude that defendant fails to make either required showing.

As a court of review, we "indulge in a presumption that counsel's performance fell within the wide range of professional competence and that counsel's actions and inactions can be explained as a matter of sound strategy. . . . If the record on appeal sheds no light on why counsel acted or failed to act in the manner challenged, an appellate claim of ineffective assistance of counsel must be rejected unless counsel was asked for an

14

explanation and failed to provide one, or there simply could be no satisfactory explanation. [Citation.] Otherwise, the claim is more appropriately raised in a petition for writ of habeas corpus." (*People v. Carter* (2003) 30 Cal.4th 1166, 1211.)

Defendant argues there could be no rational reason for not invoking the lower term presumption, as it could only have benefited him by leading to a reduced prison sentence. However, the defense may have made a tactical decision not to seek a lower term sentence. In his letter to the court, defendant expressed that his primary goal was to avoid a prison sentence. Defense counsel's written and oral arguments were consistent with that goal, as they sought to convince the court to grant defendant probation. The defense could have concluded that invoking the lower term presumption would undermine their strategy by offering the court a way to find that a prison sentence would be appropriate. We cannot say such a strategy would have been unsound.

Defendant also fails to show prejudice. He assumes that the trial court was unaware of the lower term presumption and that the presumption necessarily applied to him. We have explained why both assumptions fail. Moreover, the record affirmatively shows that the court was aware of and considered the same factual arguments that defendant would use to argue for a presumptive lower term. Yet the court ruled unequivocally that aggravating factors outweighed mitigating factors and that an upper term sentence was appropriate. It is not reasonably likely that the court would have reached a different decision, if defendant's trial counsel had expressly invoked the lower term presumption.

## DISPOSITION

The judgment is affirmed.

15

TUCHER, P. J.

WE CONCUR:

FUJISAKI, J.
RODRÍGUEZ, J.


*People v. Wilfredo* (A169525)